## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| **JOSEPH DURBIN**, *on behalf of himself and all others similarly situated,* | Case No. 3:23-cv-2345 |
| | Judge |
| Named Plaintiff, | |
| v. | **JURY DEMAND ENDORSED HEREON** |
| **BON SECOURS MERCY HEALTH, INC.** C/O Statutory Agent Corporation Service Company 3366 Riverside Drive, Suite 103 Upper Arlington, Ohio 43221, | |
| Defendant. | |

## PLAINTIFF'S COLLECTIVE AND CLASS ACTION COMPLAINT

Now comes Named Plaintiff Joseph Durbin ("Plaintiff Durbin" or "Named Plaintiff"), by and through undersigned counsel, *individually and on behalf of all others similarly situated*, for his Collective and Class Action Complaint against Defendant Bon Secours Mercy Health, Inc. ("Bon Secours" or "Defendant") for Defendant's willful failure to pay Named Plaintiff and other similarly situated employees overtime wages as well as failure to comply with all other requirements of the Fair Labor Standards Act of 1938, as amended ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and the Ohio Prompt Pay Act ("OPPA"), O.R.C. § 4113.15 and states and alleges as follows:

## INTRODUCTION

1.  The FLSA is a broadly remedial and humanitarian statute designed to correct "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers[,]" 29 U.S.C. § 202(a), as well as "to protect all

covered workers from substandard wages and oppressive working hours." *Barrentine v. Ark Best Freight Sys. Inc*., 450 U.S. 728, 739 (1981). The FLSA required Defendant to pay all non-exempt employees at least one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours each workweek. 29 U.S.C. § 207. Ohio statutory law further required the payment of overtime compensation and/or contained other compensation requirements. *See* O.R.C. § 4113.15.

2.      Plaintiff Durbin brings this Collective and Class Action Complaint to challenge the policies and practices of Defendant that violate the FLSA, 29 U.S.C. §§ 201-219, as well as the laws of the State of Ohio, to recover unpaid wages and other damages from Defendant.

3.      As to Count I, Plaintiff Durbin seeks to prosecute FLSA claims as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b), which provides that "[a]n action to recover the liability" prescribed by the FLSA "may be maintained against any employer … by any one or more employees for and on behalf of himself or themselves and other employees similarly situated" (the "FLSA Collective," as defined below).

4.      As to Count II, Named Plaintiff also brings this case as a class action under Fed. R. Civ. P. 23 on behalf of himself and other members of a class of persons who assert claims under the laws of the State of Ohio (the "Ohio Class," as defined below).[1]

5.      Named Plaintiff, the FLSA Collective, and Ohio Class now seek to exercise their rights to unlawfully unpaid overtime wages and additional statutory liquidated damages in this matter, other penalties, in addition to prejudgment and post-judgment interest, costs and attorneys' fees incurred in prosecuting this action, the employer's share of relevant taxes, and such further

---

[1] Some members of the FLSA Collective (who are located in Ohio) are also members of the Ohio Class, as both are defined hereinafter, as is the Named Plaintiff.

relief as the Court deems equitable and just as a result of Defendant's companywide unlawful pay policies/practices as more fully described below.

## I.  <u>JURISDICTION AND VENUE</u>

6.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. *See* 29 U.S.C. § 216(b).

7.      This Court also has supplemental jurisdiction over the state-law claims because these claims arise from a common nucleus of operative facts. *See* 29 U.S.C. § 1367.

8.      Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b) because all or a substantial part of the events or omissions giving rise to Named Plaintiff's claims occurred here. Specifically, Plaintiff Durbin worked for Defendant at Bon Secours's facility located at 2600 Navarre Ave., Oregon, Ohio 43616, where he was subjected to Defendant's companywide unlawful pay policies/practices as more fully described below.

## II.  <u>THE PARTIES</u>

### A.  **Named Plaintiff Durbin**

9.      Plaintiff Durbin is an individual, a citizen of the United States, and a resident of the State of Ohio.

10.      During the three years preceding this Complaint, Plaintiff Durbin worked as an hourly, non-exempt police officer for Defendant.

11.      Plaintiff Durbin's Consent to Join Form is filed herewith, pursuant to 29 U.S.C. § 216(b), and attached as **Exhibit A**, in which Plaintiff Durbin consents to be a Named Plaintiff to prosecute claims for unpaid wages, other compensation, and other damages and relief against Bon Secours Mercy Health, Inc., and any related entities, officers, agents, parent corporations,

subsidiaries, joint employers, owner(s), enterprise(s), and representatives under the FLSA and applicable state laws.

      **B.**    **Defendant's Business, Defendant's Status as an Employer,  and Defendant's Status as an Enterprise**

      12.    Defendant is a foreign corporation formed under the laws of the State of Maryland with its principal place of business located at 1701 Mercy Place, Cincinnati, Ohio 45237.[2]

      13.    According to records maintained by the Ohio Secretary of State, Defendant's Statutory Agent for service of process is Corporation Service Company, 3366 Riverside Drive, Suite 103, Upper Arlington, Ohio 43221.[3]

      14.    Bon Secours provides specialty and primary health care services to patients, consumers, and communities through hospitals, physician practices, and clinical care sites across the continental United States and globally.

      15.    Defendant operates several hospitals and clinics ("facilities") across the United States, including in Ohio, Kentucky, New York, Virginia, Maryland, Florida, and South Carolina.

      16.    At all times relevant, Bon Secours was an "employer" of Named Plaintiff and the FLSA Collective within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d), and was an employer of Named Plaintiff and the Ohio Class within the meaning of O.R.C. § 4113.15.

      17.    Defendant utilizes non-exempt employees, including Named Plaintiff, the FLSA Collective, and Ohio Class, in furtherance of its business purposes.

      18.    At all times relevant, Bon Secours was an enterprise within the meaning of 29 U.S.C. § 203(r). That is, Bon Secours performs related activities through unified operations and

---

[2] https://bsmhealth.org/who-we-are/ (last accessed Dec. 5, 2023).
[3] https://bizimage.ohiosos.gov/api/image/pdf/202224102574 (last accessed Dec. 5, 2023).

common control for a common business purpose; namely, the operation of "Bon Secours" or "Mercy Health" facilities throughout the United States.

19.    Each Bon Secours / Mercy Health facility is engaged in related activities, i.e. all activities which are necessary to the operation and maintenance of Bon Secours's business.

20.    Each facility has common management, ownership, and related interests across all Bon Secours / Mercy Health facilities.

21.    Bon Secours retains the ultimate authority over operational control over significant aspects of the day-to-day functions of each Bon Secours / Mercy Health facility, including supervising, controlling schedules, and conditions of employment of Named Plaintiff, the FLSA Collective, and Ohio Class.

22.    Each facility provides the same or similar array of services.

23.    At all times relevant, Bon Secours had direct or indirect control and authority over Named Plaintiff's, the FLSA Collective's, and Ohio Class's working conditions, including matters governing the essential terms and conditions of their employment.

24.    At all times relevant, Bon Secours exercised authority and control over Named Plaintiff, the FLSA Collective, and Ohio Class across all Bon Secours / Mercy Health facilities.

25.    At all times relevant, Bon Secours had the authority to (and currently does) hire and fire employees, supervise and control the work schedules and work conditions of employees, determine the rate and method of pay, and/or maintain employee records across all Bon Secours / Mercy Health facilities.

26.    At all times relevant, Bon Secours is an enterprise engaged in commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1)(A)(i), or has employees handling,

selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

27.     During the preceding three (3) years, Bon Secours has had annual gross volume of sales made or business done of at least $500,000 (exclusive of excise taxes at the retail level that are separately stated) pursuant to 29 U.S.C. § 203(s)(1)(A)(ii).

28.     In the alternative, Bon Secours is an enterprise under 29 U.S.C. § 203(s)(1)(B) because Bon Secours is engaged in the operation of a hospital, an institution primarily engaged in the care of the sick, the aged, or the mentally ill or defective who reside on the premises of such institution.

29.     As alleged below, Bon Secours applied its Pay-to-Shift and/or rounding practices and/or policies uniformly to its non-exempt protective service employees across all of its facilities in the continental United States.

III.     **FACTS**

30.     Plaintiff Durbin worked for Defendant from approximately May 9, 2020 until February 21, 2022 in and around Defendant's facility located at 2600 Navarre Ave., Oregon, Ohio 43616, as an hourly, non-exempt protective services employee in the position of an armed police officer.

31.     As a police officer, Plaintiff Durbin primarily performed non-exempt job duties such as performing surveillance, preventing or detecting crimes, pursuing, restraining and apprehending suspects, transporting suspects to the county jail, and other similar work.

32.     Throughout their employments as protective service employees, law enforcement officers, security guards and police officers, Defendant classified Named Plaintiff, the FLSA Collective, and Ohio Class as non-exempt under the FLSA.

33.     At all times relevant, Named Plaintiff, the FLSA Collective, and Ohio Class were non-exempt employees within the meaning of 29 U.S.C. § 203(e) and Ohio law, O.R.C. § 4113.15.

34.     At all times relevant, Named Plaintiff, the FLSA Collective, and Ohio Class were employees engaged in commerce within the meaning of 29 U.S.C. § 207.

35.     At all times relevant, Named Plaintiff, the FLSA Collective, and Ohio Class are entitled to overtime compensation at the rate of one and one-half times their regular rate of pay for the hours they worked in excess of forty (40) each workweek. 29 U.S.C. § 207; *see* O.R.C. § 4113.15.

36.     Named Plaintiff, the FLSA Collective, and Ohio Class worked overtime hours during one or more workweeks during their employments with Defendant.

37.     Like the other members of the FLSA Collective and Ohio Class (as defined below), Plaintiff Durbin regularly worked more than forty (40) hours in a workweek. Defendant was aware that Named Plaintiff, the FLSA Collective, and Ohio Class worked overtime, but Defendant did not fully and properly pay them in accordance with the minimum requirements of the FLSA and Ohio law for all of their compensable hours worked due to its companywide policies/practices as described below.

38.     Defendant shortchanged its non-exempt employees and failed to pay overtime compensation through unlawful practices that do not pay all overtime hours worked at one and one-half times their regular hourly rates for hours more than forty (40) hours per workweek.

39.     Defendant consistently, willfully, and intentionally failed to pay Named Plaintiff, the FLSA Collective, and Ohio Class for all hours, including overtime hours, worked, at the statutory overtime rate required. 29 U.S.C. § 207; *see* O.R.C. § 4113.15.

**(Defendant's Failure to Pay for Pre- and/or Post-Shift Work
Due to Defendant's Pay-to-Shift and/or Rounding Practices and/or Policies)**

40.     Named Plaintiff, the FLSA Collective, and Ohio Class are required to arrive at work prior to the scheduled start of their shifts.

41.     After arriving at the hospital, clinic, or other facility where they were required to report, but prior to clocking in, Defendant required Named Plaintiff, the FLSA Collective, and Ohio Class to perform integral and indispensable unpaid off-the-clock activities required to perform their law enforcement jobs on a daily basis, including retrieving their service weapon and donning their duty belt, protective vest, body camera, and other related law enforcement equipment ("necessary law enforcement equipment" or "LEE")[4], equipment that was generally stored in Defendant's locker rooms.

42.     Defendant required all of the LEE to be stored in Defendant's locker rooms; protective service employees were prohibited from taking the LEE home with them, and protective service employees could not arrive already wearing the aforementioned LEE on the premises.

43.     Named Plaintiff, the FLSA Collective, and Ohio Class could not perform their primary law enforcement job duties without the above LEE.

44.     In addition, Named Plaintiff, the FLSA Collective, and Ohio Class were required to engage in pass-down activities during which they received necessary instructions and information from the protective service employees they relieved. The pass-down instructions included relaying any necessary information about what had occurred during the previous shift, discussing and going over any issues, including safety issues, arrests, and/or what needed to be accomplished during the incoming shift.

---

[4] LEE and " necessary law enforcement equipment" will be used interchangeably herein.

45.     The companywide pass-down instructions are standard operating procedure and integral and indispensable for protective service employees to perform their law enforcement job duties.

46.     Retrieving the LEE, equipping their necessary law enforcement equipment, and engaging in pass-down instructions takes approximately 15 to 20 minutes to complete prior to clocking in each day.

47.     Although there was no administrative difficulty in compensating protective service employees for such work, Defendant does not count the time it takes Named Plaintiff, the FLSA Collective, and Ohio Class to complete these job duties as hours worked for purposes of computing overtime or non-overtime hours worked.

48.     Instead, *after* completing the aforementioned integral and indispensable job duties, Defendant applies a company-wide policy whereby it requires its protective service employees to clock in/out[5] each day on a computer and/or with a badge containing each employee's personal identification number, which starts tracking the time they are on the clock.

49.     After clocking in, Named Plaintiff and protective service employees walked to their respective work areas, retrieved their radios, and were also required to continue engaging in pass-down instructions with the previous shift's employees whom they were relieving.

50.     However, in addition to the off-the-clock compensable job duties described above, Defendant does not fully count the on-the-clock time it takes Named Plaintiff, the FLSA

---

[5] For all intents and purposes, the terms "punch in" and "clock in" are used interchangeably and have the same meaning herein. In addition, the terms "punch out" and "clock out" also are used interchangeably and have the same meaning.

Collective, and Ohio Class to complete the continued pass-down instructions as hours worked for purposes of computing overtime or non-overtime hours worked.

51.     After completing the above tasks, Named Plaintiff and other protective service employees performed their protective service job duties for the remainder of their shift.

52.     At the end of their scheduled shifts, Named Plaintiff and other protective service employees were required to engage in another pass-down meeting with the incoming shift's employees who were relieving them (similar to the pre-shift pass-down meeting described above).

53.     All of this work is captured on Defendant's companywide timekeeping system.

54.     Despite utilizing a company-wide timekeeping system that tracks exactly when each hourly employee "punches" or clocks in/out each day, Defendant maintains a company policy and/or practice whereby it generally only compensates its employees for their *scheduled shifts* (or rounds to their scheduled shifts) ("Pay-to-Shift Policy") rather than paying them for all of the time Defendant suffered or permitted its employees to work for its benefit.

55.     Further, at the end of their shifts, Named Plaintiff, the FLSA Collective, and Ohio Class were required to return to the locker room, doff their LEE, and store the necessary equipment and LEE in their respective lockers.

56.     The pre- and post-shift job duties described above resulted in Named Plaintiff and other similarly situated protective service employees performing integral and indispensable work for over twenty (20) minutes each day prior to and after the scheduled start and end of their shifts.

57.     Despite Defendant knowing that its employees were performing unpaid work – whether that be off-the-clock or on-the-clock -  that was integral and indispensable to their job duties prior to the scheduled start of their shifts, and after the end of their scheduled shifts,

Defendant did not pay Named Plaintiff and other similarly situated protective service employees for this pre- and post-shift work.

58.     Thus, during all times relevant, Defendant failed to pay Named Plaintiff and other similarly situated non-exempt protective service employees for all overtime and non-overtime work performed because of its policy or practice of not paying employees for pre- and post-shift work.

59.     At all times relevant, Defendant was aware that Named Plaintiff, the FLSA Collective, and Ohio Class performed integral and indispensable work as alleged above because it trained and instructed these workers to perform such work, observed them performing this work, and they could be subject to discipline if they did not perform such work, but Defendant nevertheless failed to compensate them for this work.

60.     Defendant's Pay-to-Shift Policy violates the FLSA and Ohio law because it failed to compensate Named Plaintiff for all time he and other members of the FLSA Collective and Ohio Class actually worked for Defendant's benefit.

61.     This integral and indispensable unpaid work performed by Named Plaintiff, the FLSA Collective, and Ohio Class was practically ascertainable to Defendant.

62.     There was no practical or administrative difficulty to record/pay this integral and indispensable unpaid work performed by Named Plaintiff, the FLSA Collective, and Ohio Class.

63.     The unpaid work performed by Named Plaintiff, the FLSA Collective, and Ohio Class constituted part of their principal activities, was required by Defendant, and was performed for Defendant's benefit.

64.     Moreover, the unpaid work was an integral and indispensable part of other principal activities performed by Named Plaintiff, the FLSA Collective, and Ohio Class and was part of their continuous workday.

65.     However, the unpaid work was not fully paid on a straight time regular rate basis (during non-overtime weeks), nor was overtime for it paid at the rate of one and one-half times the regular rate for the hours worked in excess of forty (40) (during overtime weeks), as required by the FLSA. Although Named Plaintiff, the FLSA Collective, and Ohio Class performed their actual, principal job duties as described above at the beginning of the workday up through and including until they leave the premises at the end of the workday, Defendant did not pay this time worked, which was required to be paid as hours worked under the FLSA. Had Defendant implemented policies in compliance with the FLSA and Department of Labor regulations, Named Plaintiff, the FLSA Collective, and Ohio Class would have been compensated for additional overtime and non-overtime hours for which they were not paid.

66.     As a result of Defendant's failure to pay for all overtime as a result of its Pay-to-Shift Policy, Defendant's failure to compensate Named Plaintiff, the FLSA Collective, and Ohio Class for hours worked more than forty (40) hours per week at "one and one-half times" the employee's "regular rate[s]" of pay constitutes a knowing and willful violation of the FLSA, 29 U.S.C. § 207, and corresponding Ohio law, O.R.C. § 4113.15.

67.     Although Defendant suffered and permitted Named Plaintiff, the FLSA Collective, and Ohio Class to work more than forty (40) hours per workweek, Defendant failed to pay Named Plaintiff, the FLSA Collective, and Ohio Class overtime at a rate of one and one-half times the regular rate of pay for all hours worked over forty (40) in a workweek. *See* 29 C.F.R. § 785.11. Though Named Plaintiff, the FLSA Collective, and Ohio Class regularly complete/completed tasks

that are required by Defendant, are performed for Defendant's benefit, and constitute part of their principal activities and/or are integral and indispensable to their principal activities before their shift starting times (and after shift ending times), these workers are not paid for the time spent performing these tasks because Defendant unilaterally did not count this time as hours worked and/or deducted this time worked, regardless of the fact that compensable work was completed. As a result, Named Plaintiff, the FLSA Collective, and Ohio Class were not properly paid for many of their hours worked as required by the FLSA and Ohio law.

68.    Defendant shortchanged Named Plaintiff, the FLSA Collective, and Ohio Class and avoided paying overtime compensation through Defendant's unlawful Pay-to-Shift and/or time rounding policy. Defendant intentionally, knowingly, and willfully deducted time worked to reduce labor costs notwithstanding that Defendant's Pay-to-Shift Policy and/or rounding time manipulation policies violate Department of Labor regulations which require both that employees' time be rounded "to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour" and that the method "will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked." 29 C.F.R. § 785.48(b).

69.    Moreover, Defendant utilizes a time rounding/editing system that has been rigged in Defendant's favor and is willfully designed to pay less time work than time paid. As a result, Named Plaintiff, the FLSA Collective, and Ohio Class have not been able to benefit from Defendant's Pay-to-Shift Policy and/or rounding system; instead, the Pay-to-Shift Policy and/or rounding system has resulted in, over a period of time, the willful failure to pay Named Plaintiff, the FLSA Collective, and Ohio Class for all hours worked, in violation of the FLSA, 29 C.F.R. § 785.48(b), and Ohio law. *See* O.R.C. § 4113.15.

70.     Defendant's pay practices were the result of systematic and company-wide policies originating at the corporate level. Defendant's policies with respect to Defendant's Pay-to-Shift Policy and time rounding resulted from knowing or reckless executive decisions. Defendant, through its supervisors and managers, knew that Named Plaintiff, the FLSA Collective, and Ohio Class were working the time for which they were not paid, as a result of Defendant's Pay-to-Shift, time-keeping, time recordation, and subsequent time rounding, and thus Defendant's actions were deliberate and willful within the meaning of the FLSA, and Defendant lacked a good faith basis for its actions. Defendant knew that Named Plaintiff, the FLSA Collective, and Ohio Class were entitled to overtime compensation under federal and Ohio law or acted in reckless disregard for whether they were so entitled.

71.     Defendant intentionally, knowingly, and willfully circumvented the requirements of the FLSA and the OPPA.

72.     The above payroll practices resulted in knowing and willful overtime violations of the FLSA, 29 U.S.C. §§ 201-219; and resulted in the unlawful deprivation of wages of Defendant to the detriment of Defendant's employees, including Named Plaintiff, the FLSA Collective, and Ohio Class, *see* O.R.C. § 4113.15.

**(Defendant's Recordkeeping Violations)**

73.     The FLSA and Ohio law required Defendant to maintain accurate and complete records of employees' time worked and amounts earned and paid. 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.2, 516.5, 516.6, 516.7; O.R.C §§ 4111.08, 4111.14(F); Ohio Const. Art. II, § 34a.

74.     For example, federal regulations require employers to make and keep payroll records showing information and data such as the employee's name, occupation, time of day and day of week which the workweek begins, regular hourly rate of pay for any week in which overtime

compensation is due, hours worked each workday and total hours worked each workweek, total daily or weekly straight time earnings, total premium pay for overtime hours, total wages paid each pay period, and date of payment and pay period covered by the payment. 29 C.F.R. § 516.2.

75.     Ohio law also provides that employers "shall maintain a record of the name, address, occupation, pay rate, hours worked for each day worked and each amount paid an employee for a period of not less than three years following the last date the employee was employed." Ohio Const. Art. II, § 34a.

76.     Defendant kept records of hours worked, or otherwise had the ability to accurately track hours worked through Defendant's hardware, software, and/or systems, by Named Plaintiff, the FLSA Collective, and Ohio Class. However, at the time the hours worked by Named Plaintiff, the FLSA Collective, and Ohio Class were transmitted to payroll for compensation purposes, Defendant willfully and intentionally transmitted post-edited, rounded, modified, and inaccurate and/or incomplete records which do not include pre- and post-shift compensable work required by, performed for, and to the benefit of Defendant, which had the direct effect of reducing Defendant's labor costs to the detriment of Named Plaintiff, the FLSA Collective, and Ohio Class. Thus, Defendant willfully and intentionally did not properly record and pay all hours worked in violation of the FLSA and violated the FLSA and Ohio law record keeping requirements.

**(The Willfulness of Defendant's Violations)**

77.     In addition to the above allegations demonstrating the willfulness of Defendant's wage violations as provided for above, Defendant knew or should have known as a substantial employer, in accordance with its obligations under the FLSA and Ohio law, that its workers, including Named Plaintiff, the FLSA Collective, and Ohio Class, were entitled to overtime compensation under federal and state law.

78.     By denying Named Plaintiff, the FLSA Collective, and Ohio Class overtime compensation as required by the FLSA, Defendant's acts were not based upon good faith. Through legal counsel as well as industry experience and custom, Defendant possessed ample access to the regulations and statutory provisions requiring the proper and prompt payment of overtime compensation under federal and Ohio law, as recited in this Complaint, but either failed to seek out such information and guidance or did seek out the information and guidance but failed to adhere to the principles of compliance as required. Defendant therefore knew about the overtime compensation requirements of the FLSA and failed to comply with them or acted in reckless disregard as to its obligations under these laws in failing to comply with them.

79.     Moreover, Defendant's overtime compensation payment, and general wage compensation payment, obligations were clearly known by Defendant, but nonetheless willfully and intentionally disregarded. For example, O.R.C. § 4111.09 provides that "[e]very employer subject to sections 4111.01 to 4111.17 of the Revised Code, or to any rules issued thereunder, shall keep a summary of the sections, approved by the director of commerce, and copies of any applicable rules issued thereunder, or a summary of the rules, posted in a conspicuous and accessible place in or about the premises wherein any person subject thereto is employed." As approved by the Director of Commerce, this conspicuously-placed posting includes the language: "OVERTIME … [a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's wage rate for hours in excess of 40 hours in one work week..." Defendant therefore knew of the overtime requirements of the FLSA, or acted in reckless disregard for whether Named Plaintiff, the FLSA Collective, and Ohio Class were entitled to overtime compensation.

80.     Named Plaintiff and the FLSA Collective are therefore entitled to liquidated damages equal to the amount of all unpaid overtime compensation pursuant to 29 U.S.C. § 260.

81.     In addition, Named Plaintiff and the Ohio Class are entitled to recovery under Ohio's law providing for recoverable untimely payment of wages pursuant to O.R.C. § 4113.15.

IV.     **COLLECTIVE AND CLASS ACTION ALLEGATIONS**

    A.     **FLSA Collective Action for Unpaid Overtime Wages**

82.     Named Plaintiff brings Count I of this action on behalf of himself and on behalf of all other persons similarly situated who have been, are being, or will be adversely affected by Defendant's unlawful conduct as described herein.

83.     As outlined above, the FLSA Collective to whom Named Plaintiff seeks the right to send "opt-in" notices for purposes of the collective action, of which Named Plaintiff himself is a member, is composed of and defined as follows:

> All current and former non-exempt (including but not limited to commission-based, hourly and salaried) protective service employees (including law enforcement officers, security guards, police officers, and other employees with similar job titles and/or duties) of Defendant in the United States during the period of three years prior to the filing of this Complaint to the present who were not paid overtime compensation at the amount of one and one-half times the employee's regular rate of pay for all hours worked over forty (40) in any workweek ("FLSA Collective" or "FLSA Collective Members").

84.     This action is maintainable as an "opt-in" collective action pursuant to the FLSA as to claims for unpaid overtime compensation, liquidated damages, attorneys' fees, and costs. In addition to Named Plaintiff, numerous current and former non-exempt protective service employees are similarly situated with regard to their wages and claims for unpaid wages and

damages. Named Plaintiff is representative of those other employees and is acting on behalf of their interests, as well as his own, in bringing this action.

85.     Maintaining this case as a collective action and issuing Notice to the FLSA Collective pursuant to 29 U.S.C. § 216(b) is proper and necessary so that such persons may be sent a Court-authorized notice informing them of the pendency of this action and giving them the opportunity to "opt in."

86.     Named Plaintiff is entitled to send notice to all potential members of the FLSA Collective pursuant to Section 216(b) of the FLSA. Identification of potential members of the FLSA Collective is readily available from the timekeeping and compensation records, including timekeeping and payroll data, maintained by Defendant. For the purpose of notice and other purposes related to this action, their names, addresses, email addresses, and phone numbers are readily available from Defendant. Notice can be provided by means permissible under the FLSA and decisional law.

87.     Immediate, prompt notice of this matter to similarly situated persons pursuant to 29 U.S.C. § 216(b) – by Court order – is proper and necessary so that such persons may be sent a Court-authorized notice informing them of the pendency of this action and giving them the opportunity to "opt in."

88.     These individuals may readily be notified of this action and allowed to opt in pursuant to 29 U.S.C. § 216(b) for the purpose of collectively adjudicating their claims for unpaid overtime compensation, liquidated damages, attorneys' fees, and costs.

89.     Named Plaintiff cannot yet state the exact number of similarly situated persons but avers, upon information and belief, that the FLSA Collective consists of several hundred or more

persons. Such persons are readily identifiable through the payroll records Defendant has maintained, and was required to maintain, pursuant to the FLSA.

**B.    Federal Rule of Civil Procedure 23 Class Action for Unpaid Wages**

90.    Named Plaintiff brings Count II under Federal Rule of Civil Procedure 23 as a class action on behalf of himself and all other members of the Ohio Class under O.R.C. § 4113.15, defined as:

> All current and former non-exempt (including but not limited to commission-based, hourly and salaried) protective service employees (including law enforcement officers, security guards, police officers, and other employees with similar job titles and/or duties) of Defendant in Ohio during the period of two years prior to the filing of this Complaint to the present who were not paid for all hours worked ("Ohio Class" or "Ohio Class Members").

91.    The Ohio Class, as defined above, is so numerous that joinder of all members is impracticable. Named Plaintiff cannot yet state the exact number of class members but avers, upon information and belief, that the Ohio Class consists of several hundred or more persons. The number of class members, as well as their identities, are ascertainable from the payroll and personnel records Defendant maintained, and was required to maintain, pursuant to the FLSA and the Ohio law. *See* 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.2, 516.5, 516.6, 516.7; and Art II., Section 34a of the Ohio Constitution.

92.    Named Plaintiff is a member of the Ohio Class and his claims for unpaid wages are typical of the claims of other members of the Ohio Class.

93.    Named Plaintiff will fairly and adequately represent the Ohio Class and the interests of all members of the Ohio Class.

94.    Named Plaintiff has no interests that are antagonistic to or in conflict with those interests of the Ohio Class that he has undertaken to represent.

95.     Named Plaintiff has retained competent and experienced class action counsel who can ably represent the interests of the entire Ohio Class. Named Plaintiff's counsel has broad experience in handling class action litigation, including wage-and-hour litigation, and are fully qualified to prosecute the claims of the Ohio Class in this case.

96.     Questions of law and fact are common to the Ohio Class and predominate over any questions affecting only individual members. The questions of law and fact common to the Ohio Class arising from Defendant's conduct include, without limitation:

(a)     whether Defendant violated the Ohio law by failing to pay the Ohio Class Members for all overtime and non-overtime wages earned because of the violation(s) described herein;

(b)     what amount of unpaid and/or withheld compensation, including overtime and non-overtime compensation, is due to Named Plaintiff and the Ohio Class on account of Defendant's violations of the Ohio law;

(c)     whether the unpaid and/or withheld compensation remains unpaid in violation of the Ohio law; and

(d)     what amount of prejudgment interest, liquidated damages, and/or other monetary relief afforded by the Ohio law is due to Named Plaintiff and the Ohio Class on the overtime, non-overtime, or other entitled compensation which was withheld or not paid to them.

97.     Class certification is appropriate under Rule 23(b)(1) because individual actions would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant with respect to the non-exempt employees comprising of the Ohio Class.

98.     Class certification is appropriate under Rule 23(b)(2) because Defendant acted or refused to act on grounds generally applicable to the Ohio Class, making appropriate relief with respect to Named Plaintiff and the Ohio Class as a whole.

99.     Class certification is appropriate under Rule 23(b)(3) because the questions of law and facts common to the Ohio Class predominate over questions affecting individual members of the Ohio Class and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

100.    A class action is superior to individual actions for the fair and efficient adjudication of Named Plaintiff's claims and will prevent undue financial, administrative, and procedural burdens on the parties and the Court.

101.    Named Plaintiff and counsel are not aware of any interfering pending Ohio litigation on behalf of the Ohio Class as defined herein. Because the damages sustained by individual members may be modest compared to the costs of individual litigation, it would be impractical for class members to pursue individual litigation against Defendant to vindicate their rights. Certification of this case as a class action will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

## V.      CAUSES OF ACTION

### COUNT I
### (29 U.S.C. § 207 - FLSA COLLECTIVE ACTION
### FOR UNPAID OVERTIME COMPENSATION)

102.    Named Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

103.    This claim is brought as part of a collective action by Named Plaintiff on behalf of himself and other members of the FLSA Collective against Defendant, individuals who may join this case pursuant to 29 U.S.C. § 216(b).

104.    The FLSA requires that non-exempt employees receive overtime compensation of "not less than one and one-half times" the employees' "regular rate" of pay. 29 U.S.C. § 207(a)(1).

105.    During the three (3) years preceding the filing of this Complaint, Defendant employed Named Plaintiff and the FLSA Collective Members.

106.    Named Plaintiff and the FLSA Collective Members were paid as non-exempt employees.

107.    During the three (3) years preceding the filing of this Complaint, Named Plaintiff and the FLSA Collective Members worked in excess of forty (40) hours in one or more workweek(s), but were not paid for all overtime hours worked as a result of one or more of Defendant's policies and/or practices as alleged above.

108.    Defendant violated the FLSA with respect to Named Plaintiff and the FLSA Collective Members by failing to pay overtime for all hours worked over forty (40) hours in a workweek at one-and-one-half times (1.5x) their regular rates of pay because of Defendant's companywide policies and/or practices described herein.

109.    Defendant knew or should have known of the overtime payment requirements of the FLSA. Despite such knowledge, Defendant willfully withheld and failed to pay the overtime compensation to which Named Plaintiff and the FLSA Collective Members are entitled.

110.    The exact total amount of compensation, including overtime compensation, that Defendant has failed to pay Named Plaintiff and the FLSA Collective Members is unknown at this time, as many of the records necessary to make such precise calculations are in the possession of Defendant or were not kept by Defendant.

111.    Defendant's failure to keep records of all of the hours worked each workday and the total hours worked each workweek by Named Plaintiff and other similarly situated employees also violates the FLSA. *See* 29 C.F.R § 516.2(a)(7).

112.     Defendant knowingly, willfully, and/or in reckless disregard carried out an illegal pattern and practice of failing to pay Named Plaintiff and the FLSA Collective overtime compensation. Defendant's deliberate failure to pay overtime compensation to Named Plaintiff and the FLSA Collective Members was neither reasonable, nor was the decision not to pay overtime compensation made in good faith. By engaging in these practices, Defendant willfully violated the FLSA and regulations thereunder that have the force of law.

113.     As a result of Defendant's violations of the FLSA, Named Plaintiff and the FLSA Collective Members were injured in that they did not receive wages due to them pursuant to the FLSA. 29 U.S.C. § 216(b) entitles Named Plaintiff and the FLSA Collective Members to an award of "unpaid overtime compensation" as well as "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b) further provides that "[t]he court … shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

## COUNT II
### (O.R.C. § 4113.15 – RULE 23 CLASS ACTION
### FOR OPPA VIOLATION)

114.     Named Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

115.     The OPPA encompasses two claims. First, a violation of any other wage statute (including the FLSA or Ohio law) triggers a failure to timely pay wages under the OPPA.

116.     Second, the OPPA allows an employee to sue to recover liquidated damages if the wages due are not in dispute.

117.     Named Plaintiff and the Ohio Class Members have been employed by Defendant.

118.     At all times relevant, Defendant was an entity covered by the OPPA, and Named Plaintiff and Ohio Class Members have been employed by Defendant within the meaning of the OPPA.

119.     The OPPA requires Defendant to pay Named Plaintiff and Ohio Class Members all wages, including overtime and non-overtime compensation, on or before the first day of each month for wages earned by them during the first half of the preceding month ending with the fifteenth day thereof *and* on or before the fifteenth day of each month for wages earned by them during the last half of the preceding calendar month. *See* O.R.C. § 4113.15(A).

120.     At all times relevant, Named Plaintiff and Ohio Class Members were not paid all wages, including overtime and non-overtime compensation, within thirty (30) days of performing the work as outlined above. *See* O.R.C. § 4113.15(B).

121.     As a result, Named Plaintiff's and Ohio Class Members' unpaid wages remain unpaid for more than thirty (30) days beyond their regularly scheduled payday.

122.     Defendant's violations of the OPPA, O.R.C. § 4113.15, injured Named Plaintiff and other Ohio Class Members in that they did not receive wages due to them in a timely fashion as required by Ohio Law.

123.     In violating the OPPA, Defendant acted willfully, without a good faith basis, and with reckless disregard of clearly applicable Ohio law.

124.     As a result of Defendant's violation of the OPPA, Named Plaintiff and Ohio Class Members are entitled to unpaid wages and liquidated damages pursuant to O.R.C. § 4113.15.

VI.     **PRAYER FOR RELIEF**

**WHEREFORE**, Named Plaintiff requests judgment against Defendant and for an Order:

A.      Tolling of the statute of limitations, *freely*, as to all would-be Opt-In Plaintiffs to the date this matter was initially filed;

B.      Directing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the FLSA Collective apprising them of the pendency of this action and permitting them to timely assert their rights under the FLSA;

C.      Certifying this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of Plaintiff and other members of the Ohio Class, who seek recovery under O.R.C. § 4113.15, and designating Named Plaintiff as representative of the Ohio Class, and counsel of record as Class Counsel for the Ohio Class;

D.      Finding that Defendant's wage and hour policies and/or practices as alleged herein violate the FLSA and the OPPA;

E.      Entering judgment against Defendant for damages for all unpaid overtime compensation owed to Named Plaintiff and the FLSA Collective during the applicable statutory period under the FLSA and continuing through trial;

F.      Entering judgment against Defendant for damages for all unpaid compensation owed to Named Plaintiff and the Ohio Class during the applicable statutory period under O.R.C. § 4113.15 and continuing through trial;

G.      Entering judgment against Defendant for liquidated damages pursuant to the FLSA in an amount equal to all unpaid overtime compensation owed to Named Plaintiff and the FLSA Collective during the applicable statutory period under the FLSA and continuing through trial;

H.      Awarding to Named Plaintiff, the FLSA Collective, and Ohio Class Members unpaid compensation, including overtime wages as to be determined at trial together with any liquidated damages allowed by the OPPA, including but not limited to an amount equal to six per cent of the amount of the unpaid wages still unpaid or two hundred dollars per Ohio Class member, whichever is greater;

I.      Awarding Named Plaintiff, the FLSA Collective, and Ohio Class prejudgment interest, post-judgment interest, and an award of damages representing Defendant's employers' share of FICA, FUTA, state unemployment insurance, and any other required employment taxes;

J.      Awarding to Named Plaintiff a service award for his efforts in remedying various pay policies/practices as outlined above;

K.      Awarding to Named Plaintiff, the FLSA Collective, and Ohio Class attorneys' fees required for prosecution of this action, expert fees, and reimbursement of all costs and expenses;

L.      Granting Named Plaintiff leave to amend to file additional claims for relief or different causes of action should information become available through investigation and discovery;

M.      Declaring judgment for all civil penalties to which Named Plaintiff and all other similarly situated employees may be entitled; and

N.      Awarding such other and further relief as this Court may deem equitable, necessary, just, or proper.

Respectfully submitted,

| | |
|---|---|
| */s/ Daniel I. Bryant* | */s Ryan A. Winters* |
| Daniel I. Bryant (0090859) | Joseph F. Scott (0029780) |
| **BRYANT LEGAL, LLC** | Ryan A. Winters (0086917) |
| 4400 N. High St., Suite 310 | **SCOTT & WINTERS LAW FIRM, LLC** |
| Columbus, Ohio 43214 | P: (216) 912-2221    F: (440) 846-1625 |
| Phone: (614) 704-0546 | 50 Public Square, Suite 1900 |
| Facsimile: (614) 573-9826 | Cleveland, OH 44113 |
| Email: dbryant@bryantlegalllc.com | jscott@ohiowagelawyers.com |
| | rwinters@ohiowagelawyers.com |
| | |
| Matthew B. Bryant (0085991) | |
| Esther E. Bryant (0096629) | Kevin M. McDermott II (0090455) |
| **BRYANT LEGAL, LLC** | **SCOTT & WINTERS LAW FIRM, LLC** |
| 3450 W Central Ave., Suite 370 | P: (216) 912-2221    F: (440) 846-1625 |
| Toledo, Ohio 43606 | 11925 Pearl Rd., Suite 310 |
| Telephone: (419) 824-4439 | Strongsville, Ohio 44136 |
| Facsimile: (419) 932-6719 | kmcdermott@ohiowagelawyers.com |
| Email: Mbryant@bryantlegalllc.com | |
|        Ebryant@bryantlegalllc.com | |

*Attorneys for Named Plaintiff and Other Members*
*of the proposed FLSA Collective and proposed Ohio Class Counsel*

## **JURY DEMAND**

Named Plaintiff hereby demands a trial by jury on all issues so triable.

*/s/ Daniel I. Bryant*

Daniel I. Bryant